# EXHIBIT A

Electronically Received 08/10/2026 08:38 AM

PACIFIC TRIAL ATTORNEYS
A Professional Corporation
Scott J. Ferrell, Bar No. 202091
sferrell@pacifictrialattorneys.com
Victoria C. Knowles, Bar No. 277231
vknowles@pacifictrialattorneys.com
4100 Newport Place Drive, Ste. 800
Newport Beach, CA 92660
Tel: (949) 706-6464
Fax: (949) 706-6469

Attorneys for Plaintiff and the Proposed Classes

**FILED**
Superior Court of California
County of Los Angeles
08/10/2026
David W. Slayton, Executive Officer / Clerk of Court
By: D. Jones Deputy

SUPERIOR COURT OF THE STATE OF CALIFORNIA

COUNTY OF LOS ANGELES

| | |
|---|---|
| FIONA KELLY, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>LIFE360, INC., a Delaware corporation, d/b/a LIFE360.COM,<br><br>Defendant. | **Case No.: 25STCV34088**<br>ASSIGNED FOR ALL PURPOSES TO THE HONORABLE LIA MARTIN, DEPT. 3<br><br>**FIRST AMENDED CLASS ACTION COMPLAINT FOR UNLAWFUL SPAMMING AND INVASION OF PRIVACY**<br><br>Complaint Filed: November 20, 2025<br>Trial Date: Not Assigned |

## I. NATURE OF ACTION

1. Defendant Life360, Inc. ("Life360") is a consumer-technology and location-services company headquartered in California that markets its products through misleading spam e-mail.

2. On October 11, 2025, Life360 sent Plaintiff Fiona Kelly a commercial email with the subject line: **"Your free Tile gift is here."** A true and correct copy of the complete email is attached as Exhibit A. The subject line did not say "free with purchase," "buy four and get one free," "conditional free gift," or otherwise alert Plaintiff that she first had to spend money to obtain the supposed gift. It affirmatively told her that her free gift "is here" — language communicating that a specific gift had already been made available to her, and directed her to Defendant's website.

3. The website revealed a materially different transaction. To obtain the supposedly "free" Tile Mate, a recipient had to purchase an entire four-pack of Tile devices, add both the four-pack and a separate Tile Mate to the shopping cart, and apply a promotional code at the final step before placing the order. The message thus used the promise of an already-available "free gift" to induce the recipient to open the email, only then disclosing that the supposed gift required a substantial purchase and completion of a multi-step commercial transaction. ***In other words, there was nothing "free" at all.***

4. That distinction is material. A "gift" ordinarily denotes something voluntarily transferred without consideration. Life360's transaction required consideration: the recipient had to buy a four-pack. More importantly, the subject line did not merely omit incidental terms; it communicated a materially different reason to open the message — an individualized, already-existing free benefit — than the purchase-conditioned promotion actually presented after opening.

5. Life360's own email design reinforces the mismatch. After the recipient opens the message, the most dominant promotional language is "A FREE MATE TO TRACK MORE THINGS" and a large graphic labeling the Tile "FREE." Only beneath that dominant free-product messaging does Life360 state the purchase condition: "Buy any 4-pack of Tiles and get an extra Mate." The email therefore uses the unconditional promise of a gift to win the open and repeatedly emphasizes "FREE" before explaining the required consideration.

6. The commercial email violates Business and Professions Code section 17529.5(a)(3) because Life360 knew that the subject line would be likely to mislead a reasonable recipient about a

material fact concerning the contents and subject matter of the message: whether Life360 had actually provided the recipient a free Tile gift or instead was offering a conditional buy-more promotion.

7. After Plaintiff opened the email and, as applicable, followed Life360's call to action, Life360's websites and related purchasing pages employed tracking technologies that Life360 itself publicly describes as including cookies, web beacons, pixels, clear GIFs, log files, embedded scripts, SDKs, and other tracking or recording tools. Life360 further states that such technologies may collect online identifiers, device identifiers, IP addresses, browsing activity, links clicked, page activity, mouse movements, keystrokes, and cart activity, and may disclose identifiers and network-activity information to advertising, marketing, social-network, research, and analytics partners.

8. This action therefore challenges two related practices in Life360's California-directed commercial architecture: materially deceptive email subject lines used to induce consumers to open purchase solicitations, and the use of third-party tracking processes on the resulting web experience to capture and transmit routing, addressing, signaling, device, session, and behavioral information without the court order required by California law and, as alleged below, before Plaintiff provided valid consent.

## II. PARTIES, JURISDICTION, AND VENUE

9. Plaintiff Fiona Kelly is a natural person and a resident and citizen of California. Plaintiff owns and uses the email address fimariekelly@gmail.com. Life360 sent the October 11, 2025 commercial email to that address.

10. Defendant Life360, Inc. is a Delaware corporation headquartered in San Mateo, California. The challenged email itself identifies Life360 Inc. at 1900 S. Norfolk Street, Suite 310, San Mateo, California 94403.

11. This Court has general personal jurisdiction over Life360 because Life360's principal executive and operational headquarters are in California and because Life360 has purposefully established continuous and systematic contacts with this State. In any event, specific jurisdiction independently exists because the challenged nationwide email campaign was created, approved, administered, or controlled from Life360's California headquarters; the sender used Life360's own

newsletter.life360.com domain; and the challenged tracking architecture is part of Life360's centrally controlled web platform.

12. California has a substantial relationship to the challenged conduct. Life360's headquarters, marketing leadership, web operations, compliance functions, and material decision-making concerning the email campaign and website tracking are located in or directed from California. The email itself identifies Life360's California address, and Life360's privacy materials identify Life360, Inc. as the entity operating its websites and tracking practices nationwide.

13. Venue is proper in Los Angeles County.

## III. THE OCTOBER 11, 2025 EMAIL

14. On October 11, 2025 at approximately 11:04 a.m., Life360 sent Plaintiff the commercial email attached as Exhibit A. The visible sender was "Life360 Trackers" and the originating address was devices@newsletter.life360.com. The complete subject line was **"Your free Tile gift is here."**

15. The email was plainly commercial. It displayed Life360's logo, promoted Tile devices, directed the recipient to "Shop 4-packs," instructed the recipient to use promotional code "FREEGIFT" at checkout, and sought to induce an immediate purchase before the stated October 18 deadline.

16. The email contained no subject-line qualifier whatsoever. Nothing visible in the subject line informed Plaintiff that the "gift" was conditional, that she had to purchase a four-pack, that she had to place a separate Tile Mate in her cart, or that she had to enter a promotional code at the last step before placing the order.

17. Upon opening the email, Plaintiff encountered the headline "EXCLUSIVE OFFER ENDS OCT 18" followed by the dominant message "A FREE MATE TO TRACK MORE THINGS." The following panel again placed "FREE" prominently next to the pictured Tile Mate.

18. Only after those unconditional "free" representations did Life360 disclose the actual economic condition: "Buy any 4-pack of Tiles and get an extra Mate in the color you like the most." The recipient also had to use code FREEGIFT at checkout. The legal terms at the bottom further required that a Tile four-pack and a single Tile Mate both be added to the cart and that the code be applied at the last step before the order was placed.

19. Thus, Life360 did not merely omit a peripheral limitation. The email changed the transaction from an already-available gift belonging to the recipient into a purchase-conditioned bundle. The required purchase was the consideration necessary to obtain the Tile Mate and was central to the economic substance of the transaction.

20. Plaintiff reasonably understood the words "Your free Tile gift is here" to mean that Life360 had made a free Tile available to her and that opening the message would allow her to claim or obtain it. She would not have understood those words to mean "Life360 will provide an additional Tile only if you first purchase a four-pack and complete specified checkout steps."

21. The difference mattered to Plaintiff's conduct. The representation was designed to induce recipients to open the message, and Plaintiff opened the message because of the promised free gift.

22. Life360 knew the distinction. The company drafted the body of the message to state the purchase condition expressly, demonstrating that Life360 understood the four-pack requirement was important enough to disclose. Life360 nevertheless omitted that requirement from the subject line and instead used individualized present-entitlement language to drive opens.

## IV. MATERIALITY AND CAN-SPAM

23. The challenged representation is material in the ordinary sense and under the CAN-SPAM savings clause. The condition concealed by the subject line determines whether the recipient receives anything at all without paying money. A reasonable consumer would consider the difference between "your free gift is here" and "you may receive an extra Tile only if you purchase a four-pack" important in deciding whether to open and engage with the commercial message.

24. This is not a claim based on technical header formatting, a minor typo, or a labeling preference. It alleges traditional deception about the economic nature of the offer used to obtain consumer attention. Life360's own body copy confirms the omitted purchase condition was a material component of the offer.

25. The claim therefore falls within the CAN-SPAM Act's express preservation of state laws prohibiting falsity or deception in commercial electronic mail. Plaintiff seeks relief because the

message materially misrepresented the bargain, not because California imposes a technical email-labeling requirement.

## V. LIFE360'S TRACKING TECHNOLOGIES

26. Life360 publicly acknowledges that when consumers visit its websites or read its emails, Life360 and its partners may use cookies, web beacons, pixels, clear GIFs, log files, embedded scripts, SDKs, location-identifying technologies, and other tracking or recording tools. Life360's privacy policy refers to those mechanisms collectively as "Tracking Technologies." See Life360 Privacy Policy (version preceding May 5, 2026), https://legal.corp.life360.com/hc/en-us/articles/40254028461463-Life360-Privacy-Policy-previous-to-May-5-2026.

27. Life360's website deploys or communicates with third-party advertising and data-profiling technologies associated with **Nativo, Beeswax, Dstillery, and Magnite.** These are not merely passive website utilities. They are components of the digital advertising ecosystem used to recognize devices, collect or receive browsing and device information, build or enrich pseudonymous profiles, attribute advertising activity, synchronize identifiers across advertising platforms, and target or measure advertising. For example, Dstillery describes itself as an advertising-technology company that analyzes web-browser and mobile-application identifiers to understand consumer behavior and expressly acknowledges using cookies and pixel tags to collect IP addresses, cookie IDs, mobile advertising identifiers, URLs visited, browser and operating-system information, and related data for profiling, targeted advertising, automated decision-making, and activities that may constitute the "sale" or "sharing" of personal information under California law. Magnite likewise states that its advertising platform automatically collects IP addresses, cookie data, device identifiers, and browsing information from users of websites employing its technology, and that its tags and pixels can track navigation and browsing behavior and synchronize information with customers and other advertising platforms. Beeswax similarly describes itself as an advertising-technology platform whose technology comes into contact with users when advertisements are displayed or clicked and processes personal information on behalf of advertisers, website owners, data providers, and other participants in the digital-advertising marketplace.

28. The privacy significance of these pixels is substantially greater than ordinary first-party website analytics. A tracking pixel is a small piece of code that causes a visitor's browser to communicate directly with a third party when a webpage loads, thereby allowing that third party to receive information about the visitor and the visit without the consumer independently navigating to the third party's website. When combined with persistent cookie IDs, advertising IDs, IP addresses, browser or device identifiers, referral URLs, timestamps, and browsing activity, these technologies can permit an advertising platform to recognize the same browser or device over time, associate activity occurring across different websites or applications, place users into advertising audiences or behavioral segments, and synchronize the information obtained on one platform with information maintained by other advertising participants. Magnite itself explains that third-party cookies can recognize the same computer when it visits other websites, and that tracking pixels may monitor traffic patterns and determine whether a visitor arrived from advertising on another site. Dstillery goes further, acknowledging that it uses identifiers to recognize devices over time, makes behavioral inferences, creates audiences for advertising activation, and permits consumers to opt out of profiling, targeted advertising, automated decision-making, and the sale or sharing of personal information.

29. Nativo is particularly significant because Life360's own current Nativo privacy materials describe "Life360 Ads Featuring Nativo" as an advertising platform providing campaign planning, buying, delivery, optimization, measurement, and analytics for advertisers and publishers. Those materials expressly acknowledge the use of cookies, pixels, beacons, and similar technologies carrying unique cookie identifiers, as well as the collection of IP addresses, browser identifiers, device identifiers, and information concerning interaction with the advertising platform. Thus, Life360 is not merely permitting an unrelated analytics vendor to count anonymous page views. It has incorporated sophisticated advertising infrastructure capable of identifying devices, measuring and attributing consumer behavior, and facilitating the commercial use of information generated by visitors to Life360's properties.

30. These technologies are privacy-invasive precisely because the consumer ordinarily sees none of this activity. The communication occurs machine-to-machine in the background when the webpage loads. A consumer may believe she is communicating only with Life360, while her browser

is simultaneously transmitting identifiers and behavioral information to multiple advertising companies that can recognize the device, combine or synchronize identifiers, infer interests from browsing behavior, and use the resulting profile for advertising and other commercial purposes. The resulting loss of privacy is not confined to the disclosure of a single IP address or cookie. The injury arises from the persistent identification, aggregation, correlation, and commercialization of a consumer's online behavior by third parties with whom she never knowingly chose to communicate.

31. Life360 further acknowledges that its Tracking Technologies may collect information concerning links clicked, actions taken, whether a recipient opened an email or clicked links in it, activity on specific website pages, mouse movements, keystrokes, items browsed or placed in a cart, IP addresses, browser information, device identifiers, advertising identifiers, and other online identifiers. Life360 states that it may combine such information with other personal information it maintains about the consumer.

32. Life360 also acknowledges using or disclosing identifiers and Internet or electronic-network activity information to advertising and marketing partners and networks, social networks, and business partners engaged in advertising, marketing, research, and analytics, including for targeted advertising and measurement.

33. These admissions establish that tracking is not an incidental or hypothetical feature of Life360's web environment; it is part of Life360's disclosed commercial data architecture. Plaintiff alleges that the Tile campaign at issue directed recipients into that same Life360-controlled environment.

34. Plaintiff opened the Life360 email and visited the Life360.com website from her personal device. The challenged pages caused Plaintiff's browser to communicate with Life360 and one or more third-party tracking endpoints before Plaintiff affirmatively consented to nonessential third-party tracking.

35. The website captured and transmitted non-content routing, addressing, and signaling information reasonably likely to identify the source of an electronic communication, including as supported by technical evidence Plaintiff's IP address, persistent cookie or device identifiers, browser identifiers, session identifiers, referrer or source information, destination information, timestamps, and

related signaling information. Plaintiff does not premise the trap-and-trace claim on the substantive contents of text entered into forms.

36. The challenged process is not merely Life360's own receipt of an IP address necessary to return a requested webpage. Life360 affirmatively embedded or configured code that caused her browser to initiate additional communications to separate third parties for attribution, analytics, advertising, profiling, or related commercial purposes.

37. The third-party requests were capable of linking Plaintiff's visit to a persistent browser or device identity, identifying the source or campaign that brought her to the page, recognizing repeat activity, and combining her Life360/Tile browsing with information maintained by third parties.

38. Plaintiff did not knowingly initiate communications with those third parties. The communications occurred because code selected and deployed by Life360 caused Plaintiff's browser to send them automatically as the Life360 page loaded.

39. Life360 did not obtain a court order authorizing installation or use of the alleged trap-and-trace process. To the extent Life360 contends that Plaintiff consented, Plaintiff alleges that the challenged nonessential third-party transmissions occurred before any valid, informed, affirmative consent was obtained.

40. The privacy injury is personal to Plaintiff. Her own device generated the challenged communications; her own routing, device, session, and source identifiers were transmitted; and the resulting identifiers were capable of recognizing and attributing her activity. The disclosure deprived Plaintiff of control over information emitted from her device and exposed her browsing activity to parties she had not chosen to contact.

## VI. CLASS ALLEGATIONS

41. Plaintiff brings this action pursuant to Code of Civil Procedure section 382 on behalf of herself and all others similarly situated. Life360 is headquartered in California, and the challenged email-marketing and web-tracking practices are standardized nationwide practices administered through Life360's centrally controlled systems.

42. Plaintiff seeks certification of the following Nationwide Email Class: **All persons in the United States who, during the applicable limitations period, received a commercial email**

**advertisement sent from California by or on behalf of Life360 or to a California e-mail address as defined by statute using the subject line "Your free Tile gift is here" or a materially identical subject line representing that the recipient had a free Tile gift, where obtaining the Tile required the recipient to purchase another Life360 or Tile product.**

43. Plaintiff also seeks certification of the following Nationwide Tracking Class: **All persons in the United States who, while physically present in California during the applicable limitations period, visited Life360.com, Tile purchase pages, or materially identical Life360-controlled web pages and whose browsers, before valid affirmative consent, transmitted to the same third-party tracking technologies identified in this Complaint the same categories of routing, addressing, signaling, device, browser, referral, session, or persistent-identifier information alleged herein.**

44. Application of California law to the Nationwide Classes is appropriate because Life360 is headquartered in California and the challenged standardized policies, marketing decisions, tracking configurations, vendor relationships, and compliance practices emanated from or were centrally controlled in California. California has a materially greater regulatory interest in the conduct of a California-headquartered enterprise acting from California than any single other State has in Life360's nationwide standardized conduct.

45. The Classes are sufficiently numerous that joinder is impracticable. The challenged email was a standardized promotional campaign. The precise number of U.S. recipients and tracked visitors is ascertainable from Life360's campaign and analytics records.

46. Common questions predominate, including whether the standardized subject line communicated an existing free gift; whether the four-pack purchase requirement was material; whether the complete email cured or instead reinforced the misleading subject line; whether Life360 knew the subject line was likely to mislead; whether the campaign was sent from California; what Tracking Technologies were deployed on the relevant pages; what categories of data they captured and transmitted; whether those transmissions occurred before consent; whether they constituted trap-and-trace processes; and whether Life360's standardized practices were highly offensive in context.

47. Plaintiff's claims are typical because she received the same standardized email subject line and was exposed to the same standardized Life360 campaign and, upon visiting the relevant Life360 web pages, the same centrally deployed tracking code as other Class members.

48. Plaintiff will fairly and adequately protect the interests of the Classes. She has no interests antagonistic to absent members and has retained counsel experienced in complex consumer, privacy, and class litigation.

49. A class action is superior because the challenged practices are standardized, Life360 possesses the records necessary to identify class membership, individual statutory and privacy damages are comparatively modest, and resolving the legality of common email templates and common web code in a single proceeding is more efficient than repetitive individual litigation.

## VII. CAUSES OF ACTION

### FIRST CAUSE OF ACTION

### Violation of Cal. Business & Professions Code § 17529.5(a)(3)

50. Plaintiff incorporates the preceding paragraphs as though fully set forth herein.

51. The October 11, 2025 message was a "commercial e-mail advertisement" because its primary purpose was to advertise and promote Life360 and Tile products and induce recipients to purchase those products.

52. Plaintiff received the email at her California electronic-mail address. As to the Nationwide Email Class, Plaintiff further alleges that the standardized campaign was sent from California within the meaning of section 17529.5(a).

53. The subject line "Your free Tile gift is here" was known by Life360 to be likely to mislead a reasonable recipient about a material fact concerning the contents or subject matter of the email. It represented that a free Tile gift belonging to the recipient was presently available. In reality, the recipient could obtain the Tile only by purchasing an entire four-pack and satisfying additional checkout conditions.

54. The required purchase was material. It transformed the advertised transaction from a gift into a conditional sales promotion requiring monetary consideration. A truthful subject line could readily have disclosed the condition, as Life360 did in the email body.

55. Life360 knew the actual terms because it drafted, approved, or caused the body and legal terms to state the four-pack purchase requirement, the promotional-code requirement, the requirement to add both products to the cart, and the promotional deadline. Life360 nevertheless chose a subject line that omitted the essential condition and affirmatively represented an existing gift.

56. The claim is based on material deception, not a technical email-format rule, and therefore falls within the CAN-SPAM Act's savings clause for state laws prohibiting falsity or deception in commercial email.

57. Life360 has not established and implemented, with due care, practices and procedures reasonably designed to prevent commercial email subject lines from materially misrepresenting the economic conditions attached to its advertised promotions, or any such procedures were ineffective as applied to the campaign alleged here.

58. Plaintiff and members of the statutory class are entitled to the remedies authorized by section 17529.5, including liquidated damages, reasonable attorneys' fees and costs, and appropriate injunctive or equitable relief.

**SECOND CAUSE OF ACTION**

**Violation of Cal. Penal Code § 638.51**

59. Plaintiff incorporates the preceding paragraphs as though fully set forth herein.

60. Penal Code section 638.50(c) defines a trap-and-trace device as a "device or process" that captures incoming electronic or other impulses identifying an originating number or other dialing, routing, addressing, or signaling information reasonably likely to identify the source of a wire or electronic communication, but not the contents of a communication.

61. The Tracking Technologies described above functioned as processes that captured non-content routing, addressing, and signaling information reasonably likely to identify the source of Plaintiff's and Class members' electronic communications.

62. Life360 intentionally installed, configured, or used those processes by embedding or causing third-party tracking code to execute on Life360-controlled web pages and to initiate communications from visitors' browsers to third-party endpoints.

63. The challenged process captured or transmitted, as established by the technical evidence, IP address and other routing information, persistent cookie or device identifiers, browser identifiers, session identifiers, source/referrer data, destination data, timestamps, and other non-content addressing or signaling information reasonably likely to identify the source of electronic communications.

64. The challenged capture occurred before valid affirmative consent and without a court order authorizing Life360's installation or use of the trap-and-trace processes.

65. Penal Code section 637.2 provides a civil remedy for violations of CIPA. Plaintiff and members of the Tracking Classes seek statutory damages and other relief permitted by law.

**THIRD CAUSE OF ACTION**

**California Common-Law Intrusion Upon Seclusion**

66. Plaintiff incorporates the preceding paragraphs as though fully set forth herein.

67. Life360 intentionally intruded into Plaintiff's and Class members' private devices and browsing sessions by causing embedded third-party code to access and transmit persistent identifiers, routing/referral information, session information, browsing behavior, and other specified data to third parties without valid prior consent.

68. Plaintiff had a reasonable expectation of privacy in the undisclosed third-party transmission of persistent identifiers and browsing/session information from her personal device before she affirmatively consented to nonessential tracking, particularly where the transmissions were made to advertising, marketing, social-network, research, or analytics partners rather than being necessary merely to deliver the webpage requested by Plaintiff.

69. The intrusion was highly offensive in context because it involved invisible third-party code, automatic pre-consent transmission, persistent identification, commercial profiling or advertising uses, and the disclosure of information concerning Plaintiff's interactions with a location-tracking and family-safety company whose products are themselves marketed on trust, security, and control over sensitive location-linked devices.

70. Life360's own privacy disclosures recognize that the information potentially collected through its Tracking Technologies can include IP addresses, device identifiers, advertising identifiers,

links clicked, email opens, page activity, mouse movements, keystrokes, and cart activity, and that certain identifiers and network-activity information may be disclosed to advertising and marketing partners and networks, social networks, and business partners engaged in research and analytics.

71. Plaintiff personally experienced the intrusion on her own device and suffered loss of privacy and control over information emitted from that device, unwanted disclosure to third parties, consumption of device and network resources, and the interference associated with undisclosed commercial surveillance of her browsing activity.

72. Life360's conduct was intentional and undertaken for commercial benefit. To the extent discovery establishes malice, oppression, or fraud within Civil Code section 3294, Plaintiff seeks punitive damages on behalf of herself and, where legally permissible, the class.

## VIII. PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests judgment against Defendant as follows:

a. For an order certifying the Nationwide Email Class and Nationwide Tracking Class, appointing Plaintiff as Class Representative, and appointing undersigned counsel as Class Counsel;

b. For statutory and liquidated damages available under Business and Professions Code section 17529.5;

c. For statutory damages available under Penal Code section 637.2 for each proven violation of section 638.51;

d. For compensatory, nominal, and other damages available on the intrusion-upon-seclusion claim;

e. For punitive damages to the extent authorized by Civil Code section 3294 and proven at trial;

f. For declaratory and injunctive relief prohibiting materially deceptive email subject lines and unlawful pre-consent third-party tracking;

g. For reasonable attorneys' fees and costs where authorized by law;

h. For prejudgment and post-judgment interest as allowed by law; and

/ / /

/ / /

i. For such other and further relief as the Court deems just and proper.

Dated: August 8, 2026

PACIFIC TRIAL ATTORNEYS, APC

By: ______________________________
Scott J. Ferrell
Attorneys for Plaintiff and the Proposed Classes

# EXHIBIT A

From: **Life360 Trackers** <devices@newsletter.life360.com>
Date: Sat, Oct 11, 2025 at 11:04 AM
Subject: Your free Tile gift is here
To: <fimariekelly@gmail.com>

EXCLUSIVE OFFER ENDS OCT 18

A FREE MATE TO TRACK MORE THINGS


FREE
tile
PICK YOUR FAVORITE COLOR
Buy any 4-pack of Tiles and get an extra Mate in the color you like the most.
Use code FREEGIFT at checkout
Shop 4-packs









**FREE $HIPPING**

Free shipping on orders over $35.

30 day returns on all devices.

Use with Apple® and Android™ devices.

Protect lost and stolen stuff.

Unsubscribe | Contact | Privacy | Life360.com
Life360 Inc. 1900 S. Norfolk Street, Suite 310
San Mateo, CA 94403

id: 'cb41'}}

Offer is valid for a free Tile Mate with the purchase of any 4-pack purchase, from October 11, 2025 to October 18, 2025 ("Offer"). Available in the US, CA, AU, NZ, UK and EU only. One-time use promotional code is non-transferable. Offer excludes the limited-edition Hello Kitty Tile Mates. Cannot be combined with any other Life360 offers or promotions unless expressly authorized by Life360. Tile products purchased through the Offer may not be substituted, exchanged, sold or redeemed for cash or other goods or services. Customers are responsible for all federal, state, and/or local taxes based on shipping address, in accordance with applicable laws. Void where prohibited, taxed or restricted by law. Credit card information is required at the time of purchase. Life360 reserves the right, in its sole discretion, to cancel, terminate, modify or suspend this Offer (or any portion thereof) and disqualify individuals at any time. Use of Tile devices requires acceptance of our Terms of Service, and acknowledgment of our Privacy Policy. Any information collected as part of this Offer is subject to our Privacy Policy. You must add a Tile 4-pack and a single Tile Mate to your cart, then apply the discount code FREEGIFT in the Life360.com shopping cart at the last step before placing the order.

**PROOF OF SERVICE**
**STATE OF CALIFORNIA, COUNTY OF ORANGE**

I am employed in the County of Orange, State of California. I am over the age of 18 and not a party to the within action; my business address is 4100 Newport Place, Suite 800, Newport Beach, CA 92660.

On August 10, 2026, I served the foregoing document described as **FIRST AMENDED COMPLAINT** on the following person(s) in the manner indicated:

**SEE ATTACHED SERVICE LIST**

☐ (BY MAIL) I am familiar with the practice of Pacific Trial Attorneys for collection and processing of correspondence for mailing with the United States Postal Service. Correspondence so collected and processed is deposited with the United States Postal Service that same day in the ordinary course of business. On this date, a copy of said document was placed in a sealed envelope, with postage fully prepaid, addressed as set forth herein, and such envelope was placed for collection and mailing at Pacific Trial Attorneys, Newport Beach, California, following ordinary business practices.

☐ (BY OVERNIGHT FEDERAL EXPRESS) I am familiar with the practice of Pacific Trial Attorneys for collection and processing of correspondence for delivery by overnight courier. Correspondence so collected and processed is deposited in a box or other facility regularly maintained by Federal Express that same day in the ordinary course of business. On this date, a copy of said document was placed in a sealed envelope designated by Federal Express with delivery fees paid or provided for, addressed as set forth herein, and such envelope was placed for delivery by Federal Express at Pacific Trial Attorneys, Newport Beach, California, following ordinary business practices.

☐ (BY HAND DELIVERY) I am familiar with the practice of Pacific Trial Attorneys for collection and processing of correspondence for hand delivery by courier. I caused such document to be delivered by hand to the addresse(s) designated.

☐ (BY ELECTRONIC SERVICE) I am causing the document(s) to be served by email from the electronic notification address of mguevara@pacifictrialattorneys.com the document described above on the date shown below to the email addresses of the persons listed in the attached service list.

☒ (BY ELECTRONIC SERVICE via USA Legal) I am electronically serving the document described above and a copy of this declaration to the person, on the date shown below, to the email addresses of the persons listed in the attached service list. I am readily familiar with the business' practice for filing electronically, and that the document would be electronically served the same day in the ordinary course of business following ordinary business practices.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct, and that this declaration was executed on August 10, 2026, at Newport Beach, California.

Mandy K. Jung

## SERVICE LIST

Tyler G. Newby
FENWICK & WEST LLP
One Front Street, 33rd Floor
San Francisco, CA 94111
Telephone: 415.875.2300
Facsimile: 650.938.5200
Email: tnewby@fenwick.com
dwalls-stewart@fenwick.com

Attorneys for Defendant
LIFE360, INC.

Samuel Sahagian
FENWICK & WEST LLP
730 Arizona Avenue, 1st Floor
Santa Monica, CA 90401
Telephone: 310.554.5400
ssahagian@fenwick.com